### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### EASTERN DISTRICT OF TENNESSEE

In re

                  Case No.  05-37361

LAWRENCE ALLEN OWSLEY
ROBIN ANN OWSLEY

       Debtors


**MEMORANDUM ON DEBTORS' EMERGENCY**
**MOTION TO REOPEN BANKRUPTCY CASE**


**APPEARANCES:**  MAYER & NEWTON
         John P. Newton, Jr., Esq.
         Richard M. Mayer, Esq.
         1111 Northshore Drive
         Suite S-570
         Knoxville, Tennessee  37919
         Attorneys for Debtors

        STATE OF WEST VIRGINIA
         Laura J. Straley, Esq.
         Post Office Box 970
         Danville, West Virginia  25053
         Attorneys for West Virginia Bureau for Child Support Enforcement


**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

Before the court is the Motion by Debtors to Reopen Chapter 13 Case (Motion to Reopen) filed by the Debtors on November 1, 2012, asking the court to reopen their Chapter 13 bankruptcy case to allow them to file a motion for contempt against the Boone County Bureau of Child Support Enforcement and/or the West Virginia Department of Health & Human Services for violation of the discharge injunction of 11 U.S.C. § 524(a)(2) (2004).[1]  On November 21, 2012, the State of West Virginia, Bureau for Child Support Enforcement (Bureau for Child Support Enforcement), filed its Response to Motion by Debtors to Reopen Chapter 13 Case (Response), arguing that the case should not be reopened because the debt owed to it and/or Leona White is child support and not dischargeable under the Bankruptcy Code.  Following a hearing and pursuant to an Amended Order entered on November 29, 2012, the parties agreed that an evidentiary hearing was not required and that all matters in controversy could be resolved upon stipulations and briefs.

The record before the court consists of the following:  (1) a Notice of Additional Documents filed by the Debtor on December 7, 2012, attaching a letter to the Debtor from the Social Security Administration dated October 26, 2012, advising him of a deduction for child support; (2) BCSE's Proposed Stipulations filed by the Bureau of Child Support Enforcement on December 10, 2012; (3) BCSE's Proposed Points of Judicial Notice filed by the Bureau of Child Support Enforcement on December 10, 2012, attaching (A) an Arrearage Certification Statement; (B) West Virginia Department of Health and Human Resources Bureau Child Support Enforcement - Arrearage Computation Sheet through November 30, 2012; (C) an Order for Income Deduction entered July 30, 1993, by the Circuit Court for the Eighteenth Judicial Circuit in and for Brevard County,

---

[1] Section 524(a)(2) provides that "[a] discharge in a case under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]." 11 U.S.C. § 524(a)(2) (2004).

2

Florida, in *Leona Roberts v. Lawrence A. Owsley*, Case No. 937814; (D) Florida Code Title VI, Chapter 61, Subsection 29; (E) Florida Code Title VI, Chapter 61, Subsection 30; (F) West Virginia Code § 48-18-110; (G) West Virginia Code § 48-13-101; (H) West Virginia Code § 48-13-102; and (I) West Virginia Code § 48-13-201; (4) Addendum to BCSE's Proposed Points of Judicial Notice filed by the Bureau of Child Support Enforcement on December 10, 2012, attaching a notarized statement of Leona White;[2] (5) the Debtors' Brief filed by the Debtors on December 26, 2012, attaching the Proof of Claim in the amount of $22,431.43 filed on April 14, 2006, by Leona Gail White and Boone Co. BCSE; and (6) the Brief of the West Virginia Bureau for Child Support Enforcement in Response to Debtors' Motion to Reopen filed on January 18, 2013, by the Bureau of Child Support Enforcement. Additionally, as set forth in the Amended Order entered on November 29, 2012, the court takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of a number of material undisputed facts of record in the Debtors' case file.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O) (2006).

---

[2] In their Brief, the Debtors "object[] to the additional issues submitted by the State of West Virginia after the due date of December 7, 2012." DEBTORS' BR. at 2. The Bureau of Child Support Enforcement, however, has been authorized by the Amended Order entered November 29, 2012, "to file all documents in paper format rather than through the court's electronic case filing system." AMD. OR. at ¶ 3. Accordingly, the Proposed Points of Judicial Notice and Addendum to Proposed Points of Judicial Notice, which are dated December 7, 2012, but received by the clerk and filed on December 10, 2012, were timely filed under Rule 9006(f) of the Federal Rules of Bankruptcy Procedure which states that "[w]hen there is a . . . requirement to act . . . within a prescribed period after service and that service is by mail . . ., three days are added after the prescribed period would otherwise expire under Rule 9006(a)." FED. R. BANKR. P. 9006(f).

# I

The Debtors filed the Voluntary Petition commencing their Chapter 13 bankruptcy case on October 14, 2005, prior to the October 17, 2005, effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).  The Debtors also filed their Chapter 13 Plan on October 14, 2005, and on October 15, 2005, the clerk issued the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines, which was served, along with a Proof of Claim form, on the Bureau of Child Support Enforcement.  As reflected within the Notice, the Debtors' meeting of creditors was scheduled for January 5, 2006.  On December 2, 2005, the Debtors filed an Amended Plan which was served on the Bureau of Child Support Enforcement via certified and first-class mail.  Neither the Bureau of Child Support Enforcement nor Leona Gail White objected to confirmation, and the Amended Plan was confirmed pursuant to an Order Confirming Chapter 13 Plan (Confirmed Plan) entered on January 10, 2006.  The Confirmed Plan provides for weekly payments of $50.00, payment of all tax refunds, and a dividend to unsecured creditors of less than 5%.  Additionally, the Confirmed Plan states "13. Special Provisions: State of WVA – back child support – paid as unsecured."

On April 14, 2006, Leona Gail White and the Bureau of Child Support Enforcement filed an unsecured priority claim in the amount of $22,431.43, which was amended on July 17, 2006, to the amount of $22,253.75, attaching as exhibits thereto arrearage computations, an Acknowledgment of Automatic Assignment of Support Rights and of Cooperation Requirement executed by Leona Roberts on August 9, 1989, and a Final Judgment on Report and Recommendation of the Hearing Officer entered on July 21, 1993, establishing paternity and child support in the amount of $154.00 monthly.  As established by the Acknowledgment of Automatic Assignment of Support Rights and

of Cooperation Requirement, Leona Gail White, then Leona Roberts, assigned future child support payments owed by the Debtor Lawrence Allen Owsley to the Bureau of Child Support Enforcement pursuant to the West Virginia Code, Chapter 9, Article 3, Section 4.

On December 18, 2009, the Chapter 13 Trustee filed the Objection by Chapter 13 Trustee to Proof of Claim Filed by Boone Co. BCSE (Objection to Claim), objecting to the allowance of the amended Proof of Claim as a priority claim and moving the court for an order allowing the claim as a nonpriority unsecured claim pursuant to the terms of the Confirmed Plan.  The Objection to Claim was served on the Bureau of Child Support Enforcement and Leona Gail White, neither of whom filed a response within the 30-day objection period set forth in the passive notice legend, and on January 22, 2010, the court entered the Order Resolving Chapter 13 Trustee Objection to Proof of Claim Filed by Boone Co. BCSE, sustaining the Trustee's Objection to Claim and directing that the priority claim filed by the Bureau of Child Support Enforcement in the amount of $22,253.75 would be paid as a general unsecured claim.  The court entered the Discharge of Debtors After Completion of Chapter 13 Plan on February 4, 2010, and on April 22, 2010, the Chapter 13 Trustee filed the Chapter 13 Standing Trustee's Final Report and Account, reflecting that the Debtors had fulfilled all of their obligations under the Confirmed Plan and that the Bureau of Child Support Enforcement had been paid $6,196.90 on its allowed unsecured claim of $22,253.75.  Thereafter, on January 7, 2011, the Debtors' bankruptcy case was closed, and a final decree was issued discharging the Chapter 13 Trustee.

Following the receipt of a letter dated October 26, 2012, from the Social Security Administration Retirement, Survivors and Disability Insurance Division, advising the Debtor Lawrence Allen Owsley that it would be withholding $192.50 from his payment each month for

5

child support, the Debtors filed the Motion to Reopen on November 1, 2012, to which the Bureau of Child Support Enforcement filed its Response on November 21, 2012. As set forth in the Arrearage Certification Statement executed by Jodi A. Little, Representative for the Bureau of Child Support Enforcement, on December 7, 2012, the total child support arrears owed by the Debtor, through November 30, 2012, was $9,778.51, representing $854.00 owed to the State of West Virginia and $8,924.51 owed to Leona Gail White.

Pursuant to the Joint Statement of Issues filed by the parties on December 5, 2012, the court is asked to resolve the following issues as defined by the parties: (1) whether the domestic support obligation exception to discharge under the Bankruptcy Code pre-BAPCPA applied to the Proof of Claim filed by the Bureau of Child Support Enforcement and/or Leona White; (2) whether the Debtors' completion of payments required by the Confirmed Plan and their subsequent discharge resulted in a discharge of Lawrence Allen Owsley's obligations to the Bureau of Child Support Enforcement and/or Leona White; (3) whether the claim of the Bureau of Child Support Enforcement and/or Leona White was identified as child support; (4) whether the January 21, 2010 Order changed the characterization of the Proof of Claim from child support to something dischargeable; (5) whether the pre-BAPCPA exception to discharge found in 11 U.S.C. § 523(a)(5) (2006) applies to the debt owed to the Bureau of Child Support Enforcement and/or Leona White; (6) whether amendments to 42 U.S.C. § 656(b) (2006) apply to child support in this case; (7) whether the Debtors objected to the designation of the claim as child support; (8) whether the discharge referenced that the claim for child support was dischargeable; (9) what impact would assigned versus unassigned child support have in this case; and (10) if the debt was discharged, whether the court should grant the Motion to Reopen.

6

## II

The authority to reopen a closed bankruptcy case is derived from § 350(b) of the Bankruptcy Code, which provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b) (2006). Because "cause" is not statutorily defined, motions to reopen are determined on a case-by-case basis after the underlying equities are weighed, *In re Jenkins*, 330 B.R. 625, 628 (Bankr. E.D. Tenn. 2005), and the decision to reopen a case is within the sound discretion of the bankruptcy judge. *Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539, 540-41 (6th Cir. 1985). "Reopening of a Chapter 7 case, by itself, affords no independent relief, but merely gives a bankruptcy court opportunity to act on a substantive request for relief." *In re Kirksey*, 433 B.R. 46, 48 (Bankr. D. Colo. 2010). Accordingly, motions to reopen should only be granted when the moving party demonstrates a compelling reason to do so, and "'[t]he longer the time between the closing of the estate and the motion to reopen[,] the more compelling the reason for reopening the estate should be.'" *In re Skyline Woods Country Club, LLC*, 431 B.R. 830, 835 (B.A.P. 8th Cir. 2010) (quoting *In re Apex Oil Co., Inc.*, 406 F.3d 538, 542 (8th Cir. 2005)).

On the other hand, a motion to reopen should not be granted if doing so would be futile because no relief can be afforded the moving party. *In re Tarkington*, 301 B.R. 502, 506 (Bankr. E.D. Tenn. 2003); *accord Chanute Prod. Credit Assoc. v. Schicke (In re Schicke)*, 290 B.R. 792, 798 (B.A.P. 10th Cir. 2003) ("A bankruptcy court that refuses to reopen a Chapter 7 case that has been closed will not abuse its discretion if it cannot afford the moving party any relief in the reopened case."). Likewise, a case "'should not be reopened to relieve a party of its own neglect or mistake.'" *Skyline Woods Country Club*, 431 B.R. at 835 (quoting *In re Borer*, 73 B.R. 29, 31 (Bankr. N.D.

Ohio 1987)).  With respect to the issues herein, the court finds that there is no basis for, nor is there any purpose to be served by reopening the case because, under the law as it existed pre-BAPCPA, just as it does presently, debts for child support are nondischargeable, irrespective that it was not treated in or paid through the Debtors' Confirmed Plan as priority, and the Bureau of Child Support Enforcement's actions to recover on that debt – which has not been discharged and is still owed – are not contemptuous.

The dischargeability of debts is governed by 11 U.S.C. § 523(a) and, in particular, with respect to child support obligations pre-BAPCPA:

> (a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
>> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>>
>>> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State)[.]

11 U.S.C. § 523(a)(5)(A) (2004).  Under this prior version of the law, "the Bankruptcy Code on its face clearly indicates that child support debts are dischargeable only in two limited circumstances, where the debt, denominated as child support, is in fact not such, or, where the debt is assigned to an entity other than a governmental entity." *Ward v. State of Alaska Dept. of Rev. (In re Ward)*, 188 B.R. 1002, 1005 (Bankr. M.D. Ala. 1995).

8

> Section 523(a)(5)(A) explicitly excludes from the exception to discharge voluntary or statutory assignments to entities other than children, spouses and former spouses. This limitation to the exception to discharge is itself limited by language which makes clear that an assignment of a debt pursuant to section 408(a)(3) of the Social Security Act—which refers to a voluntary assignment of support as part of the AFDC program—and other similar assignment of debts to governmental entities are treated like support owed to a child, spouse or former spouse. In other words, under section 523(a)(5)(A), if a debt for child support was assigned to a governmental unit it cannot be discharged in bankruptcy.

*Roy v. Reg'l Child Support Enforcement Unit (In re Roy)*, 315 B.R. 108, 111 (Bankr. D.N.D. 2004) (citations omitted); *see also In re Beverly*, 196 B.R. 128, 132 (Bankr. W.D. Mo. 1996) ("Section 523(a)(5)(A) still mandates that claims for child support which were assigned to a government agency are nondischargeable.").

It is undisputed that the child support obligation owed by the Debtor Lawrence Allen Owsley to Ms. White was assigned to a governmental unit – the State of West Virginia – pursuant to the Acknowledgment of Automatic Assignment of Support Rights and of Cooperation Requirement dated August 9, 1989, as a requirement of her receiving financial assistance from the West Virginia Department of Human Services under West Virginia Code § 9-3-4, which states the following:

> Any recipient of financial assistance under the program of state and federal assistance established by Title IV of the federal Social Security Act of 1965, as amended, or any successor act thereto, shall, as a condition of receiving assistance funded under this part, assign to the Department of Health and Human Resources any right the family member may have (on behalf of the family member or of any other person for whom the family member has applied for or is receiving such assistance) to support from any other person, not exceeding the total amount of assistance so paid to the family, which accrues during the period that the family receives assistance under the program.
>
> Each applicant for assistance subject to the assignment established in this section shall (during the application process) be informed in writing of the nature of the assignment.
>
> Any payment of federal and state assistance made to or for the benefit of any child or children or the caretaker of a child or children creates a debt due and owing to the

> Department of Health and Human Resources by the person or persons responsible for the support and maintenance of the child, children or caretaker in an amount equal to the amount of assistance money paid: *Provided*, That the debt is limited by the amount established in any court order or final decree of divorce if the amount in the order or decree is less than the amount of assistance paid.
>
> The assignment under this section shall subrogate the Department of Health and Human Resources to the rights of the child, children or caretaker to the prosecution or maintenance of any action or procedure existing under law providing a remedy whereby the Department of Health and Human Resources may be reimbursed for moneys expended on behalf of the child, children or caretaker.  The Department of Health and Human Resources shall further be subrogated to the debt created by any order or decree awarding support and maintenance to or for the benefit of any child, children or caretaker included within the assignment under this section and shall be empowered to receive money judgments and endorse any check, draft, note or other negotiable document in payment thereof.
>
> The assignment created under this section shall be released upon closure of the assistance case and the termination of assistance payments except for support and maintenance obligations accrued and owing at the time of closure which are necessary to reimburse the department for any balance of assistance payments made.
>
> The Department of Health and Human Resources may, at the election of the recipient, continue to receive support and maintenance moneys on behalf of the recipient following closure of the assistance case and shall distribute the moneys to the caretaker, child or children.

W. VA. CODE § 9-3-4 (2000).  Unquestionably, the assignment by Ms. White to the State of West Virginia is being serviced by an entity of the State, the Bureau of Child Support Enforcement, pursuant to West Virginia Code § 48-18-110, which provides that "[a]ttorneys employed by the bureau for child support enforcement may represent this state . . . in an action brought under the authority of federal law of this chapter . . . [and a]n attorney . . . represents the interest of the state or the bureau and not the interest of any other party."  W. VA. CODE § 48-18-110(a), (b) (2001). Accordingly, the Debtors' argument that Ms. White's assignment of the child support obligation removed the nondischargeability protections of § 523(a)(5) is without merit.

Likewise, the Debtors' argument that the Confirmed Plan and the Order Resolving Chapter 13 Trustee Objection to Proof of Claim Filed by Boone Co. BCSE somehow served to discharge the Debtor's child support obligation is flawed and fails. "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan[,]" 11 U.S.C. § 1327(a) (2004), and following confirmation, the plan "is treated as the exclusive and transcendent relationship between the debtor and the creditor." *Salt Creed Valley Bank v. Wellman (In re Wellman)*, 322 B.R. 298, 301 (B.A.P. 6th Cir. 2004). Nevertheless, "disallowance of a claim and nondischargeability are separate issues[,]" *Zich v. Wheeler Wolf Attys. (In re Zich)*, 291 B.R. 883, 886 (Bankr. M.D. Ga. 2003), and "there is nothing inconsistent with 11 U.S.C. § 523(a)(5) for a debt to be nondischargeable and also nonpriority." *Sys. & Servs. Techs., Inc. v. Jordan (In re Jordan)*, 2000 WL 33943202, at *2 (Bankr. S.D. Ga. Sept. 27, 2000); *see, e.g., In re Gray*, 269 B.R. 881 (Bankr. N.D. Ala. 2001) (finding that neither dischargeability nor liability was at issue with respect to the chapter 13 trustee's objection to payment of the State of Alabama's claim under an assignment by the former spouse for child support). "[W]hen read together, §§ 362(b)(2), 1328(a)(2), and 523(a)(5) manifested a Congressional intent to except child support obligations from the reach of § 1327 and therefore from the effects of a chapter 13 plan." *Vasquez v. Ga. Dep't of Human Res. Office of Child Support Servs. (In re Vasquez)*, 2007 WL 7023836, at *2, 2007 Bankr. LEXIS 4746, at *7-8 (Bankr. S.D. Ga. Aug. 28, 2007) (citing *Pacana v. Pacana-Siler (In re Pacana)*, 125 B.R. 19, 22 (BAP 9th Cir. 1991)). Accordingly, a debtor's "personal liability for unpaid back child support . . . arrearages – domestic support obligations – are not affected by a Chapter 13 discharge and cannot be discharged in bankruptcy." *In re Hutchens*, 480 B.R. 374, 383 (Bankr. M.D. Fla. 2012) (holding that "the unpaid arrearage for back alimony and child support

established [pre-petition] . . . is nondischargeable under 523(a)(5) . . . [and does] not absolve him of the duty to pay the balance on this obligation and the interest that accrues on it under the applicable [state] law at some later time.").

As it relates to the Proof of Claim filed by the Bureau of Child Support Enforcement, the Confirmed Plan provides as follows:

> 3. **PRIORITY EXPENSES (including ADMINISTRATIVE EXPENSES)** under 11 U.S.C. §503(b) and §1326 shall be paid in full, including fees to the debtors attorney in the amount of $1,600.00 less $0.00 previously paid by the debtor. Claims entitled to priority under 11 USC §507 (b) shall be paid in full in deferred cash payments with tax claims being paid as priority, security, or unsecured in accordance with the filed claim.
>
> **West Virginia Child Support is non-priority to be paid pursuant to Paragraph 13 below, as unsecured.**
>
> . . . .
>
> 13. **Special Provisions**: **State of WVA - back child support - paid as unsecured.**

CONFIRMED PLAN. Nothing within the Confirmed Plan purports to determine the dischargeability of the debt; it merely addresses the method in which the debt was to be paid over the life of the plan, providing that the entire debt not be paid in full during the five-year plan term but be paid in the same manner as nonpriority unsecured creditors. Irrespective of the Debtors' treatment under the Confirmed Plan for payment to the Bureau of Child Support Enforcement, the nature of the obligation itself did not change and remains nondischargeable.[3] The $6,196.90 paid by the Debtors

---

[3] In their Brief, the Debtors reference the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 599 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) in support of their argument that "the State of West Virginia was placed on notice that the claim was being treated in a non-priority manner and not within the scope of a child support claim excepted from discharge under 11 U.S.C. § 523(a)(5)[; t]herefore, as a matter of law, the plan, by its terms, and Order of discharge on February 4, 2010 discharged any further liability of the debtor[.]" DEBTORS' BR. at 4. The plan at issue in *Espinosa*, however, contained a provision expressly stating that the accrued interest on the debtor's student loans would be discharged, *Espinosa*, 130 S. Ct. at 1374, while the Confirmed Plan in the present case makes no reference to dischargeability.

under the Confirmed Plan against the total $22,253.75 unsecured claim served to reduce the balance of the debt owed to the Bureau of Child Support Enforcement on the remainder of its nondischargeable debt.[4]

Accordingly, because it would be futile to reopen the case, the Motion to Reopen shall be denied. An order consistent with this Memorandum will be entered.

FILED: May 29, 2013

                        BY THE COURT

                        */s/ RICHARD STAIR, JR.*

                        RICHARD STAIR, JR.
                        UNITED STATES BANKRUPTCY JUDGE

---

[4] The Discharge of Debtors After Completion of Chapter 13 Plan received by the Debtors on February 4, 2010, clearly states in the section entitled "**Debts That are Not Discharged**" include "a. Domestic support obligations[.]"

13